IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| SUIKO PRZEDWOJEWSKI, ) | |
| ) | |
| Plaintiff; ) | |
| ) | |
| vs. ) | 7:11-cv-2114-LSC |
| ) | |
| NHS MANAGEMENT, LLC, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

MEMORANDUM OF OPINION

Plaintiff, on behalf of herself and others similarly situated,[1] filed suit claiming that Defendants, as "primary payers," failed to remit payment to Medicare of certain amounts due pursuant to the Medicare Secondary Payer Act ("MSP"), 42 U.S.C. § 1395y.[2] Plaintiff thus seeks judgment against Defendants in the amount of double the amount owed to Medicare pursuant to the private cause of action provision of the

---

[1] While Plaintiff purports to bring this action on behalf of herself and others similarly situated, the individual and thus class claims asserted by her fail to state a cause of action. The issue of class certification has not yet been addressed in this action and is not addressed in this opinion other than to recognize that the dismissal has no binding effect on any class of individuals. However, it does appear obvious to the Court that the "failure of predominance is readily apparent from a reading of the . . . plaintiffs' complaint." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F. 3d 999, 1006 (11th Cir. 1997).

[2] Plaintiff also included in her Complaint as Count II a request for injunctive relief. This relief is premised upon the same theory as Count I and so is dismissed for the same reasoning as Count I without any further discussion.

MSP. Pending is Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to both Rule 12(b)(1) and 12(b)(6). (Doc. 13.) The issues raised in Defendants' Motion to Dismiss are ripe for decision. After considering the pleadings and submissions, the motion is due to be granted.

**I. Introduction.**[3]

Plaintiff was a Medicare beneficiary and a resident of Defendant Jacksonville Health and Rehabilitation, LLC., ("JHR") in 2005 when she fell on two separate occasions and was injured.[4] Plaintiff contends that her injuries were the result of JHR's negligence. Plaintiff was treated for her injuries and payment was "conditionally" made for such medical care by Medicare as a secondary payer. Medicare then gave notice of its lien for $32,042.83, the entire amount paid for Plaintiff's medical care in treating both falls.

In 2006, Plaintiff sued Defendants in state court to recover damages for her medical expenses (including those paid for by Medicare) as well as pain and suffering. The case was referred to binding arbitration, resulting in an award to Plaintiff of $65,000. The award included a specific finding that Defendants were only liable for

---

[3] Unless otherwise indicated, the facts are taken from the Plaintiff's Complaint and the representations made by Plaintiff's counsel at the oral arguments on the Motion to Dismiss.

[4] Plaintiff asserted in the Complaint that both falls were in April; however, her subsequent representations to the Court are that the second fall was more than a month later.

the first fall. Since Plaintiff was seeking all the medical bills in the litigation, the award included all damages that she was due, including the medical expenses. Judgment was entered in Plaintiffs' favor in that amount on January 19, 2010, in the state court.

Defendants remitted payment to Plaintiff in the amount of $65,000 in full satisfaction of the judgment. After case expenses and attorney fees were satisfied, the sum of $12,401.29 remained. While this amount was initially paid by Plaintiff to Medicare pursuant to its lien, Medicare ultimately refunded Plaintiff $9,930.55.[5]

Plaintiff initiated this action pursuant to the private cause of action provision of the MSP. 42 U.S.C. § 1395y(b)(3)(A). Plaintiff contends that pursuant to the MSP, Defendants each became a "primary plan" upon the judgment being entered in the state court case establishing liability for one of Plaintiff's falls. As such, Plaintiff asserts that Defendants were required to remit payment to Medicare of all Medicare's medical expenses made necessary by Plaintiff's fall. When Defendants failed to make such payment within sixty days of the state court judgment, Plaintiff contends that she became vested with the right to sue Defendants and demand the sum of double the amount originally due Medicare. Plaintiff maintains that she is entitled to that amount

---

[5] Following the commencement of this suit, Medicare reconsidered the amount it claimed was due in order to satisfy its lien and determined that the medical expenses resulting from the second fall were not due to be reimbursed and further that after deduction of permitted procurement costs, Plaintiff was due a refund of $9,930.55. Thus Medicare was ultimately paid by Plaintiff the sum of $2,470.74 in full satisfaction of its lien.

even though Medicare's lien amount was included in the judgment she recovered from Defendants in state court and even though Defendants paid her that judgment.

Defendants insist that they were not obligated to reimburse Medicare since they paid the judgment obtained by Plaintiff in her state court action and since Plaintiff reimbursed the amount Medicare was due.

## II. Standard of Review.

"It is by now axiomatic that the inferior federal courts are courts of limited jurisdiction. They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). In addition, "[t]o invoke the power of the federal courts . . . a litigant must have 'standing.' The Article III component to standing requires that a plaintiff allege [s]he has suffered actual or threatened injury at the hands of the defendant, fairly traceable to the allegedly unlawful conduct, and likely to be redressed by the requested relief." *Steele v. National Firearms Act Branch,* 755 F.2d 1410, 1413-14 (11th Cir. 1985) (internal citations

omitted). Further, "[sh]e bears the burden of showing that [s]he has standing for each type of relief sought." *Summers v. Earth Island Institute,* 555 U.S. 488, 493 (2009).

"Because a motion to dismiss for lack of standing is one attacking the district court's subject matter jurisdiction, it is brought pursuant to Rule 12(b)(1)." *Region 8 Forest Service Timber Purchasers Council v. Alcock,* 993 F.2d 800, 807 n. 8 (11th Cir. 1993). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Warth v. Seldin,* 422 U.S. 490, 501-02 (1975) (internal citations omitted).

"A motion to dismiss under Rule 12(b)(1) may assert either a factual attack or a facial attack to jurisdiction. A factual attack challenges 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.' In a facial attack, on the

other hand, the court examines whether the complaint has sufficiently alleged subject matter jurisdiction. As it does when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged by in the complaint as true." *Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)).

Defendants have also moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff has failed to state a claim upon which relief may be granted. "When considering [such] a motion to dismiss, all facts set forth in . . . [P]laintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)(quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). Also, all "reasonable inferences" are drawn in favor of Plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 545 (2007).[6] But "[P]laintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). Plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id.* at 570. Unless Plaintiff has "nudged [her] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.*

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (quoting FED. R. CIV. P. 8(a)(2)). Therefore, the U.S. Supreme

---

[6] In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Bell Atl. Corp.*, 550 U.S. at 560-63. The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.

Court suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1951-52). However, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory [she] relies upon since the court must determine if the allegations provide for relief on any possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997).

## III. Analysis.

The Eleventh Circuit Court of Appeals has recognized that the MSP authorizes a private cause of action, but has made it clear that the MSP is not a *qui tam* statute; thus, Plaintiff cannot bring such an action unless she has standing in her own right. *See Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.,* 524 F.3d 1229, 1234

(11th Cir. 2008). "The 'triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.' *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1003 (11th Cir. 2004) (*citation omitted*). '[F]irst and foremost, there must be alleged . . . an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical.' *Id*. 'An interest unrelated to injury in fact is insufficient to give . . . [P]laintiff standing.' *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000). Thus, a plaintiff without an injury in fact lacks Article III standing, and the federal courts do not have jurisdiction over . . . her complaint." *Stalley*, 524 F. 3d at 1232.

     Defendants assert that Plaintiff lacks standing because she was paid, through the satisfaction of her judgment in the underlying state court tort case, all amounts due her for compensatory damages—including the medical expenses due Medicare. Indeed, Plaintiff acknowledged to the Court that she had demanded the full amount of medical expenses she and Medicare had expended in the treatment of the injuries sustained in her falls. The Arbitration Award specifically found that Defendants were not responsible for the second fall and simultaneously awarded Plaintiff $65,000 for damages incurred as a result of the first fall. Since the judgment included all

compensatory damages due, and she sought all her and Medicare's incurred medical expenses, Defendants contend that she lacks the required "injury in fact" needed for her to have standing to bring this action. In other words, Defendants argue that she was paid all she was entitled to receive along with all that Medicare was entitled to receive. The argument concludes that under the operation of the MSP, Plaintiff was then obligated to reimburse Medicare the amount she had recovered on Medicare's behalf.[7]

This would appear a reasonable conclusion, and is supported by the representation of Plaintiff that Medicare had refunded to Plaintiff $9,930.55 following the initiation of this proceeding as "costs of procuring the Medicare reimbursement." It was also represented to the court that Medicare had "marked" its lien as satisfied after receiving a total of $2,470.74 from Plaintiff's state court judgment. Clearly Plaintiff had standing to pursue the state court action and to seek to recover all of the medical expenses incurred in her treatment in that state court action. However, Plaintiff still must show that she has standing for this MSP claim. *See Summers,* 555 U.S. at 493.

---

[7]Defendants would nonetheless have been required to reimburse Medicare the amount of Medicare's conditional payment if Plaintiff had failed to reimburse Medicare after receiving payment of the judgment in the state court. *See* 42 C.F.R. § 411.24(i)(1).

Plaintiff contends that she experienced an actual injury in fact arising from both her loss of the use of the $9,930.55 while it was in the hands of Medicare and the fact that she was made to reimburse Medicare rather than Defendants paying Medicare the amount due it over and above the amount of the state court judgment. Thus both legs of her standing argument depend upon the conclusion that Defendants were responsible for paying the Medicare lien even though Defendants' liability for those medical bills had been contested in the state court tort action and even though Defendants had in effect been ordered to pay those bills to Plaintiff by way of the state court judgment.

Even if this Court concludes that Plaintiff has stated an injury that "is concrete and actual or imminent, not conjectural or hypothetical," *Parker,* 386 F.3d at 1003, "[t]here must also be a nexus between the injury and the action of the defendant. The injury must both be caused by the defendant and be remediable by the defendant." *Wehunt v. Ledbetter,* 875 F.2d 1558, 1567 (11th Cir. 1989). From a simple reading of the MSP it is clear that Defendants acted in accordance with the requirements of the Act. When Defendants were sued in Plaintiff's state tort action, it was Plaintiff who demanded to be paid the medical expenses originally paid by Medicare. By doing this,

Plaintiff set the course of her own journey. Defendants had no choice but to participate with the cards the Plaintiff had dealt.

Plaintiffs sought and received a judgment including the medical expenses that Medicare had conditionally paid. Following the satisfaction of that judgment, by Defendants, Medicare obtained from Plaintiff reimbursement from that judgment for those medical expenses. This appears to the Court to be exactly the way the MSP and its applicable regulations are designed to work.

Plaintiff's "injury," if having to reimburse Medicare an amount you sought to recover for them in your suit, is an "injury" at all, was certainly not "caused by" Defendants. In deed, Plaintiff orchestrated the situation that resulted in her being required to reimburse Medicare. Plaintiff could have chosen not to sue for the medical expenses paid by Medicare. Under that scenario, once a judgment had been entered affixing liability for the first fall, Defendants would certainly have been obligated to directly reimburse Medicare for the expenses Medicare conditionally paid because of that fall. Then, if Defendants had failed to reimburse Medicare, perhaps Plaintiff would be entitled to maintain the private cause of action they seek. That was not the path, however, that Plaintiff chose.

Defendants did not run afoul of the requirements of MSP by contesting Plaintiff's assertion that they were liable for her injuries with regard to the two falls. In fact, the MSP provides a mechanism by which "[t]he Secretary may make payment . . . with respect to an item or service if a primary plan . . . has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations). Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund in accordance with the succeeding provisions of this subsection." 42 U.S.C. § 1395y(b)(2)(B)(i).

Further, when Plaintiff received payment of the judgement including the medical expenses conditionally paid by Medicare from Defendants, reimbursement was required. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii). The problem is not that Plaintiff claimed the medical expenses conditionally paid by Medicare. The problem is that once Plaintiff was awarded those expenses in her state court action, she insisted that she did not have to reimburse Medicare—asserting instead that Defendants were supposed to pay those expenses a second time. If such is permitted, then every tortfeasor who is at fault in causing injury to any Medicare beneficiary would have no choice but to remit payment in full, not only to the beneficiary, but also to

Medicare—even when the liability for such expenses is contested. To do otherwise would risk a likely MSP private cause of action for double the amount conditionally paid by Medicare.

The Sixth Circuit recently addressed a similar situation when a Medicare beneficiary, who had been injured in an automobile accident, first recovered the full amount of his damages from a tortfeasor and then refused to reimburse Medicare. As in this case, Medicare sought the amount it had paid on behalf of the beneficiary less the cost of recovery. The beneficiary argued that there were other parties who had contributed to his injuries and that since this tortfeasor was only partly at fault, the beneficiary should only have to reimburse Medicare part of the amount it paid. The Court noted that the beneficiary did not demand in his underlying action that the tortfeasor pay only part but instead claimed all of the incurred medical expenses. "That choice has consequences—one of which is that [the beneficiary] must reimburse Medicare for those same expenses." *Hadden v. U.S.,* 661 F.3d 298, 303 (2011).

The Sixth Circuit explained that "Federal law aims to make Medicare only a 'secondary payer' as to medical expenses for which some other entity (e.g., a tortfeasor) bears responsibility." *Id. (*citing 42 U.S.C. § 1395y(b)(2)). "Medicare paid

[the beneficiary's] expenses . . . pursuant to a provision that allows it to do so if the responsible entity might not pay the expenses 'promptly[.]' 42 U.S.C. § 1395y(b)(2)(B)(i). But that same provision gives Medicare the right to seek 'reimbursement' from the responsible entity or the beneficiary, if the beneficiary himself later receives a payment directly from the responsible entity." *Hadden*, 661 F.3d at 300 (citing 42 U.S.C. § 1395y(b)(2)(B)(ii), (iii)).

Applicable regulations also authorize Medicare to seek recover from a Medicare beneficiary who has received payment from the primary plan. *See* 42 C.F.R. § 411.24(g). "If the beneficiary or other party receives a primary payment, the beneficiary or other party must reimburse Medicare within 60 days." 42 C.F.R. § 411.24(h).

The Plaintiff in this case lacks standing to pursue the private cause of action established by the MSP. Thus the action is due to be dismissed. Recognizing however that this case presents a difficult question of standing and further that neither party has cited the Court to **any** prior decision on point, this Court will go on to determine whether Plaintiff's complaint states a cause of action as pleaded, ignoring the requirement of standing.

Plaintiff maintains that she brings her private cause of action "as a matter of right bestowed by the MSP Statutes, including 42 U.S.C. § 1395y(b)(3), which allows

a medicare beneficiary such as Plaintiff, damages in an amount double the amount otherwise provided, on behalf of the United States, in case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)." (Complaint p. 2.) Plaintiff represents that "[b]y virtue of the entry of the judgment entered on January 19, 2010, Defendants . . . became primary payers under the MSP." (Complaint p. 7). Plaintiff goes on to claim that since Defendants did not reimburse Medicare, in addition to paying Plaintiff's state court judgment, Plaintiff was entitled to recover double the amount conditionally paid by Medicare. (Complaint p. 15.)

The statute does not, however, create quite the boondoggle Plaintiff's complaint seems to portray. The MSP does fashion a private cause of action, but only upon the occurrence of one of two situations: where a primary plan either "fails to provide for primary payment," or "appropriate reimbursement." 42 U.S.C. § 1395y(b)(3)(A). The "primary plan" in this case is clearly alleged to be Defendants, either individually or jointly. The question is, taking the facts as alleged by Plaintiff in her complaint, did Defendants fail to make a "primary payment" or "appropriate reimbursement."

"Primary payment means, when used in the context in which Medicare is the secondary payer, payment by a primary payer for services that are also covered under

Medicare." 42 C.F.R. § 411.21. Thus the payment made by Defendants to Plaintiff in satisfaction of the judgment which included an award of the incurred medical expenses would be a "primary payment."

Plaintiff does not contend that Defendants failed to make a required "primary payment" but instead insists that "[d]espite having a statutory obligation to reimburse Medicare for the amounts paid by Medicare by virtue of the judgment within 60 days of the judgment, Defendants failed to repay Medicare." (Complaint p. 6.) In other words, Plaintiff rests her claim upon what she contends was a failure of Defendants to make an "appropriate reimbursement." The question then is, taking the facts as alleged by Plaintiff, does Plaintiff sufficiently allege that Defendants failed to make an "appropriate reimbursement"? In short, she does not.

In making this decision, this Court may examine regulations promulgated to carry out the MSP. *See State of Fla. v. Mathews,* 526 F.2d 319, 324 (5th Cir. 1976).[8] And since the MSP requires the Secretary to "promulgate regulations to carry out [the MSP]," 42 U.S.C. § 1395y(b)(8)(o)(3)), then unless it is "clearly erroneous or unreasonable, the interpretation of [the] statute by [the] regulatory agency that is

---

[8] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

charged with administering it is given considerable deference by federal courts." *Mathews*, 526 F.2d at 324.

The MSP directs that "[a] primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii). Thus both the Primary Plan (Defendants) and Beneficiary (Plaintiff) could have been required to make the reimbursement. This conclusion is further supported by the implementing regulation, "[i]f a Medicare conditional payment is made . . . [and] [i]f the beneficiary or other party receives a primary payment, the beneficiary or other party must reimburse Medicare within 60 days." 42 C.F.R. § 411.24(h). Therefore, once Defendants had paid Plaintiff the conditional Medicare payments through the judgment, only if the Plaintiff had not reimbursed Medicare would Defendants had to have directly reimbursed Medicare. Once again, this is consistent with the regulations. "In the case of liability insurance settlements . . . [i]f Medicare is not reimbursed as required by paragraph (h) of this section, the primary payer must reimburse Medicare

even though it has already reimbursed the beneficiary or other party." 42 C.F.R. § 411.24(i)(1).

The MSP does not require Defendants to make payment of the Medicare expenses to Plaintiff and then to Medicare as well. When Plaintiff chose to demand and obtain a judgment including Medicare's interests, and was paid the same, Plaintiff became obligated to reimburse Medicare. The only way Defendants would then be required to reimburse Medicare was if Plaintiff absconded with the money without making that reimbursement. That did not happen here. The facts as made out by Plaintiff simply do not state a claim under the MSP private cause of action grant.

**IV. Conclusion.**

For the reasons stated herein, the Motion to Dismiss will be Granted. A separate Order consistent with this Memorandum of Opinion will be enter herewith.

Done this <u>17th</u> day of <u>February 2012</u>.

                                  _____
                                  L. SCOTT COOGLER
                                  UNITED STATES DISTRICT JUDGE
                                                              [167037]